(5 App. Div. 249.)

PEOPLE ex rel. CROFT et al., Commissioners of Public Charities, v. MAN-
HATTAN STATE HOSPITAL et al.

(Supreme Court, Appellate Division, First Department. May 15, 1896.)

1. CERTIORARI—WHEN LIES—JUDICIAL PROCEEDING.
The making of a rule by the chairman of the commission in lunacy regu-
lating the admission of persons into the insane asylum is not a judicial
proceeding, and therefore cannot be reviewed on certiorari.

2. MANDAMUS—MINISTERIAL DUTY.
Under Laws 1890, c. 126, § 5, requiring each state hospital for the insane.
to receive patients from the district in which it is situated, imposes on.
the officers of such hospitals a merely ministerial duty, which may be en-
forced by mandamus.

3. OFFICE AND OFFICER—REASONABLE REGULATION—QUESTION OF LAW OR FACT.
Whether a regulation made by a public officer is reasonable is a question
of law, unless its reasonableness depends on the existence of facts of
which the court cannot take judicial notice.

4. SAME—WHEN A QUESTION OF LAW.
The question whether a regulation prescribed by the chairman .of the·
commission in lunacy, requiring each patient, before he is sent to a state
hospital, to be furnished with new clothing, in order to prevent the intro-
duction of contagious or infectious diseases, is reasonable, does not involve·
any disputed question of fact, and may therefore be determined as a ques-
tion of law, where it appears that many persons, whose clothing is dilapi-·
dated and filthy, are annually sent to such hospitals; that in some cases
disease had been traced to the wearing of such clothes by patients; that
the number of inmates of such hospitals is over 19,000,—though it also·
appears that many patients are sent from Bellevue Hospital, at which·
there are conveniences for disinfecting clothing, and that persons whose·
clothing has been thus disinfected may usually be safely received at.
the hospitals, and several physicians made affidavit that the regulation.
was "unreasonable," "absurd," etc.

5. SAME—WHEN REGULATION IS REASONABLE. ·
A rule that patients shall not be received at a hospital for the insane un-
less they are first provided with new clothing, in order to prevent danger·
of introducing diseases into the hospital, prescribed by the chairman of·
the commission in lunacy, pursuant to Laws 1890, c. 126, § 6, requiring
superintendents of the poor, before sending a patient to any asylum, to·
provide him with comfortable clothing, according to regulations to be pre-·
scribed by the chairman, is reasonable.

Appeal from special term, New York county.

Application by Silas C. Croft and others, commissioners of public·
charities, for a writ of mandamus to the Manhattan State Hospital.
From an order granting a peremptory writ, defendant hospital ap-
peals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,.
O'BRIEN, and INGRAHAM, JJ.

Burton N. Harrison, for appellant.
George L. Sterling, for respondents.

RUMSEY, J. The Manhattan State Hospital is one of the insane·
asylums which are now under the charge of the state commission in
lunacy. It was converted into a state hospital, and transferred from.
the control of the city of New York to the state authorities, by chap-
ter 2 of the Laws of 1896. By that law it became amenable to the·
regulations, statutory and otherwise, which had been prescribed by·

the legislature and proper authorities for the regulation of other state hospitals.    One of those regulations, which is contained in the Laws of 1890, provides that all superintendents of the poor, or town, county, or city authorities, sending a patient to any asylum under the provisions of that act, should, before sending him, see that he is in a state of bodily cleanliness, and has comfortable clothing, in accordance with the regulations to be prescribed by the chairman of the state commission in lunacy.    Laws 1890, c. 126, § 6.    In performance of the duty devolved upon the chairman of the state commission in lunacy by this provision of the statute, he prescribed certain regulations with regard to the kind and condition of the clothing which must be furnished to each patient before he was sent to a state hospital.    The part of that regulation which is material here, and the only portion which needs to be considered, is the following:

"Considering the great danger always present of the introduction of contagious or infectious diseases into institutions where large numbers of people are congregated, and to avoid so far as possible the introduction of such diseases by means of wearing apparel, the clothing above provided for must, in all cases, be new."

On the 2d day of March, 1896, one O'Donohue, who had been regularly adjudged to be insane, was sent to the Manhattan State Hospital as a patient by the relators; but Dr. McDonald, the superintendent of the hospital, declined to receive him, upon the ground that his clothing was not new.    O'Donohue was in a state of bodily cleanliness, and was respectably and comfortably clothed, and his clothing, as it is alleged in the moving papers, and is not disputed, was clean, and there was no apparent danger of his carrying contagious or infectious diseases.    Upon the refusal of the superintendent of the state hospital to receive O'Donohue, an order to show cause was granted why this writ of mandamus should not issue. Objection having been made that the members of the state commission in lunacy should have been made parties to the proceeding, it was afterwards amended by bringing them in as defendants.    Upon the hearing of the order to show cause why the mandamus should not be granted, affidavits were read by the defendants; and upon a consideration of the affidavits, and upon an examination of the patient, who was produced in court, the judge at special term granted a peremptory writ of mandamus, requiring the officers of the Manhattan State Hospital to receive O'Donohue, although his clothing was not new, as required by the regulation in question.    From the final order directing that the writ shall issue, this appeal is taken.

The first objection taken by the appellants is that the gentlemen composing the state commission in lunacy were not properly joined as parties to this proceeding, because no relief was asked against them, and their presence was not necessary to the final determination of the proceeding.    All this is undoubtedly true.    The validity of the regulation which was made by the chairman of the state board cannot be directly examined by any proceeding which will lie in the courts.    The making of this regulation was not in any sense a judicial proceeding, and therefore the writ of certiorari will not lie

to review it. It can only be reviewed, when it shall come up collaterally, where it is asserted that the regulation itself is not a reasonable one; but the decision of that question does not call for the presence of the state commission in lunacy, and for that reason they are not necessary parties to this proceeding. But, in view of the conclusion which we have come to upon the merits of this case, that objection is not important, and will not be further considered.

It is claimed, on the part of the appellants, that the court has no jurisdiction in this proceeding, and that its authority does not extend to a direction by mandamus to require the officers of the state hospital to receive this patient. This objection goes, not only to the power of the court in this particular case, but to the general power and jurisdiction of the supreme court to issue a mandamus to any state board or body whatever, whose general authority arises from an act of the legislature. We are quite clear that the objection is not well taken. Section 5 of chapter 126 of the laws of 1890, requires that each of the state hospitals for the insane shall receive patients from the district in which the asylum is situated. This imposes upon the officers of this hospital a merely ministerial duty, as to which they have no discretion whatever; and in every case where a patient has been properly adjudged to be a lunatic, it is their absolute duty to receive him, if he comes from the proper district, and if he complies in all respects with such requirements as may legally be imposed. That mandamus will lie to a public officer to compel the performance of such a duty is so well settled as hardly to need the citation of authority to sustain it. If, however, one should be curious to see the extent to which the courts have gone in that regard, the rule may be found in High, Extr. Rem. § 80, and in 14 Am. & Eng. Enc. Law, at page 99, and the numerous cases there cited. The mere fact ·that the person charged with the duty has to pass upon the sufficiency of the papers presented to him does not make his duty a judicial one, so as to prevent the issue of the writ of mandamus.

There is no question here that the papers were sufficient. That is conceded on all hands. The only objection taken by the defendant was that the regulation made by the chairman of the state board of lunacy forbade him to receive any person as a patient in the hospital unless that patient was clad in clothing which was entirely new. The question is, therefore, whether that regulation was one which he was bound to obey. It was clearly made upon a subject which was committed to the authority and to the discretion of the chairman of the state board. It was for him to say, not only that the man should be comfortably clothed, but, within certain limits, of what that clothing should be composed; and any regulation which he made upon that subject was to be obeyed by the officers of the different state hospitals, if it was valid. But, wherever the legislature has devolved upon any officer, municipal or otherwise, the duty of making regulations or ordinances with regard to the performance of public duties, it is essential to the validity of those ordinances that they should be reasonable; and, unless they are reasonable, they are not valid, and are not enforceable. City of Boston v.

Shaw, 1 Metc. (Mass.) 130. Whether the regulation established be a by-law or an ordinance of a municipal corporation, or a regulation established by some official board, having by authority of the legislature jurisdiction to make regulations upon a special subject, the rule is the same; and it is laid down that such ordinances or regulations must be reasonable, not inconsistent with the laws or policy of the state, and consonant with the purposes of the institution for which they are made. Dill. Mun. Corp. § 319; Cooley, Const. Lim. marg. pp. 200, 201. The question presented here, then, is whether or not this regulation was a reasonable one; for, if it was, the superintendent of the state hospital was bound to obey it, and he was justified in refusing to receive O'Donohue.

But before proceeding to the examination of that question, it is necessary to consider whether it involves anything more than a question of law, because, by the express provision of the Code, a peremptory writ of mandamus can be issued upon motion only where the applicant's right depends upon questions of law. Code Civ. Proc. § 2070. If the decision of any disputed question of fact should be necessary to enable the court to decide whether this regulation was reasonable, the proper course would have been to direct an alternative writ to issue, that the defendants might make return, and the issue of fact raised upon that return might be tried by a jury. Ordinarily, the reasonableness of a regulation of this kind is a pure question of law (Com. v. Worcester, 3 Pick. 462), and usually evidence will not be received upon the question. But if the necessity and reasonableness of it depend upon the existence of particular facts, of which the court cannot take judicial notice, it must be left to be decided as a question of fact upon proper evidence. Clason v. City of Milwaukee, 30 Wis. 316. It is necessary, therefore, in the first instance, to examine the testimony which has been produced here, to see whether there is any disputed question of fact which must be decided to enable the court to judge whether this regulation is reasonable or not. We have been unable to discover any such question. So far as we can ascertain, there is no disputed question of fact in the papers. The affidavits presented by the relator make it appear that a large number of persons are annually sent from what is known as the "Pavilion of Bellevue Hospital" to the Manhattan State Hospital. It appears that there are conveniences at the Bellevue Hospital for disinfecting the clothing which has been worn by patients, and that such clothing, when disinfected, is free from germs, and not likely to carry contagion or infectious diseases with it; and we think that it may fairly be inferred from the evidence that persons clad in clothing thus disinfected may, under ordinary circumstances, safely be received by officers of the state hospital, without danger. None of these facts are disputed in the affidavits produced by the defendants, but it is made to appear by them that throughout the state large numbers of people are sent to the state hospital, not only without proper clothing, but whose clothing is exceedingly dilapidated and filthy, and that in some cases contagious and infectious diseases are traced directly to the wear-

ing of such clothing by such patients. It is said that this is particularly the case in the larger cities of the state, owing to the fact that there is a much greater amount of contagious and infectious disease in those cities.

It is made to appear, by the affidavits of Dr. Howard, of Dr. Pilgrim, and other superintendents of the state hospitals, that the rule requiring new clothing has been rigidly enforced, and the existence of it throughout the state generally is quite material to the safety of the inmates of the state hospitals. These gentlemen are men of recognized ability and large and varied experience in this matter, and their testimony upon this question of fact is to be highly considered. In addition to that, it is made to appear that the number of inmates in the various hospitals is over 19,000, of which 6,800 and upward are in the Manhattan State Hospital; and it is stated (what might be easily appreciated, although it had not been shown) that the introduction of contagious or infectious disease into any one of these hospitals, in which such great numbers of these poor people are collected, would produce the most serious consequences. None of these facts are denied. It is true that the eminent professional gentlemen who have made affidavits in behalf of the relator have sworn that in their judgment this regulation is "unreasonable," "absurd," "void," "without authority of law," and have applied to it other epithets more or less strong which have occurred to them upon the subject. But these epithets, however convincing they may be as expressing the opinion of the affiants, are still only opinions, and not statements of facts, and can aid us in deciding as to the reasonableness of these regulations only so far as the opinion of experts can be considered upon such questions. None of them change the facts, nor do they raise any disputed question of fact upon the subject.

The question, then, stands to be decided as a question of law, upon a consideration of everything which has been made to appear in these papers. When that is considered, the presumption in the first instance always is that the regulation is reasonable. Com. v. Patch, 97 Mass. 221. In examining the question, it must be considered, in the first place, that it is a general regulation for the whole state. There is no question that some regulation is absolutely necessary which shall prevent the introduction of contagious or infectious diseases into these places, where great bodies of people are closely congregated, many of whom are unable to care for themselves. It is conceded by all the affiants that such diseases may be carried in the clothing of the people who are committed to these hospitals. It appears, and is not denied, that many of the patients who are committed from the great cities, and especially many of those committed from the city of New York, are picked up in the streets, and that when they are taken into custody their persons are dirty, and their clothing is ragged and dilapidated and filthy, and in such condition as to render it entirely unsafe that, clad in that clothing, they should be sent to these asylums. It was eminently proper, therefore, that most stringent methods should be taken to prevent the transmission of diseases by means of these people. It is conceded on

all hands that the regulation provides for a method which is ef-. fective. It is said that some other method may be equally good, but the fact that that is so does not render the regulation which adopts this particular method either unreasonable or improper. If the regulation is within the power of the president of the state commission, as it is; if it is adapted to its purpose, and one which might under any circumstances be made,—then, within the rule that all presumptions are in favor of the validity of such regulations, it must be adjudged to be reasonable, unless the contrary is made to appear.

The only fact which can be said to be presented to show that the regulation is unreasonable is that the cost of clothing people in new clothing, as required by it, would be very large. Conceding, as we must, that the statements of the moving papers are to be adopted in that regard (or otherwise the question of fact will be raised), still those statements are not sufficient to warrant the finding that such a regulation is not a proper one. The purchasing agent for the department of public charities says that the cost of clothing the different persons with new clothing would be from $18 to $20. It can easily be seen that that is an exceedingly liberal allowance for the clothing to be furnished to these people. But it cannot be said that the cost of it is so great as to enable us to say that it would require an extravagant expenditure. The president of the state board has the right to prescribe such regulations as will make it almost certain that no infection shall be carried by these people. He is not called upon to make a regulation, the efficacy of which depends upon the disinfecting of clothing which these people have upon them, when he has no means of controlling the extent or thoroughness of that disinfecting; but he may make such a regulation as will enable the officers of the different state hospitals to satisfy themselves that there is no danger of infection from people who are brought there, without its being necessary that they should, in every case, or in any case, go to the hospitals or places from which these people are brought, and see that proper means have been taken to disinfect their clothing before they are sent to the asylum. Indeed, to do that would be practically impossible, and we can see no other means than the one provided by the president of the commission to insure safety from the introduction of contagious diseases into the hospitals, by new patients, except the one which he has made.

But it is claimed that the case is not within the regulation which has been the subject of discussion, because it is said that the regulation says that new clothing need not be provided where patients are transferred from one institution for the care and treatment of the insane to another. If there were any such provision in the regulation, still we think the argument of the respondent in that regard is not quite ingenuous. It apears in the case, from their own papers, that O'Donohue was never an inmate -of an institution for the care and treatment of the insane. It appears that he was arrested on the 27th of February, 1896, charged with insanity, was on that day examined and found to be insane, and was at once committed to

the Manhattan State Hospital, and that he was taken there on the 2d of March. It appears that, during that time, he was kept at the pavilion, which was not a place for the care and treatment of the insane, but a place where those supposed to be insane in the city of New York were kept, pending examination as to their sanity, and until proper papers could be made out certifying their insanity, and directing to what asylum they should be taken. It is in no sense an institution for the care and treatment of the insane, nor can it be claimed to be. But there is no such provision in the rule, a certified copy of which is presented under the seal of the commission, and which contains no such provision as is set out in the moving papers.

Upon the whole case we are satisfied that the regulation is a reasonable one; that the superintendent of the state hospital was bound to obey it; that, pursuant to it, he was justified in refusing to receive O'Donohue; that it was the duty of the commissioners of charities to comply with it; and that, as they did not do so, the motion for a mandamus should have been denied.

The final order is reversed, and the motion for a writ of mandamus is denied, with $50 costs and disbursements. All concur.